IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE RENNIE<br>35755 Roberts Road<br>Eastlake, Ohio 44095<br><br>    Plaintiff,<br><br>  v.<br><br>KENNEDY GROUP/LOST NATION<br>PARKWAY I LTD.<br>38601 Kennedy Parkway<br>Willoughby, Ohio 44094<br><br>  **Serve also:**<br>  Kennedy Group/Lost Nation Parkway<br>  I Ltd.<br>  c/o Peter Chen<br>  38601 Kennedy Parkway<br>  Willoughby, Ohio 44094<br><br>  -and-<br><br>CRYSTALL THOMAS<br>6091 Douglas Drive<br>Madison, Ohio 44057<br><br>    Defendants. | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES<br>AND REINSTATEMENT**<br><br>**JURY DEMAND ENDORSED<br>HEREIN** |

Plaintiff, Stephanie Rennie, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

## PARTIES AND VENUE

1. Rennie is a resident of the city of Eastlake, county of Lake, state of Ohio.

2. Kennedy Group/Lost Nation Parkway I Ltd. ("Kennedy Group") is a domestic limited liability company that operated a business located at 38601 Kennedy Parkway, Willoughby, Ohio 44094.

3. Kennedy Group was at all times hereinafter mentioned an employer within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 126 § 12101 *et seq.*

4. Kennedy Group was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq.*

5. Upon information and belief, Defendant Crystal Thomas is a resident of the state of Ohio.

6. Thomas made and/or participated in the adverse actions asserted herein.

**JURISDICTION & VENUE**

7. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Rennie is alleging a Federal Law Claim under the ADA, 42 U.S.C. 126 § 12101 *et seq.*

8. This Court has supplemental jurisdiction over Allen's state law claims pursuant to 28 U.S.C. § 1367 as Rennie's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

9. All of the material events alleged in this Complaint occurred in Lake County.

10. Within two years of the conduct alleged below, Rennie dual-filed Charges of Discrimination with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC"), against Defendants.

11. On or about June 1, 2023, the OCRC issued and mailed Notice of Right to Sue letters to Rennie regarding the Charges of Discrimination against Defendants.

12. On or about August 21, 2023, the EEOC issued and mailed a Notice of Right to Sue letter to Rennie regarding the Charges of Discrimination against Defendants.

13. Rennie received her Right to Sue letter from the EEOC – which has been attached hereto as Plaintiff's Exhibit A.

2

14. Rennie received her Right to Sue letters from the OCRC – which have been attached hereto as Plaintiff's Exhibits B and C.

15. Rennie has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter from the EEOC.

16. Rennie has timely filed this Complaint within the relevant statute of limitations pursuant to R.C. § 4112.052.

17. Rennie has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

18. Rennie has properly exhausted her administrative remedies pursuant to R.C. § 4112.051.

19. Venue is proper pursuant to 28 U.S.C. § 1391.

20. This Court has personal jurisdiction over Kennedy Group because it is a limited liability company that is registered to conduct business in this District, and at all times material to the allegations contained herein, each conducted substantial business in this District and had sufficient minimum contacts within this District.

21. This Court has personal jurisdiction over Thomas because she is domiciled within this District.

## FACTS

22. Rennie is a former employee of Kennedy Group.

23. Rennie began working for Kennedy Group on or around June 1, 2021.

24. Kennedy Group employed Rennie as a catcher, rewinder, and finisher.

25. Kennedy Group initially employed Rennie as a rewinder/finisher.

26. Rennie suffers from osteoarthritis.

27. Rennie's osteoarthritis constitutes a physical impairment.

28. Rennie has a record of her osteoarthritis.

29. Rennie's osteoarthritis substantially impairs one or more of her major life functions, including standing, walking, and working.

30. As a result of suffering from osteoarthritis, Rennie is disabled.

31. Alternatively, Defendants perceived Rennie to be disabled.

32. Despite any real or perceived disability, Rennie was capable of performing her essential job functions with or without reasonable accommodation(s).

33. While in the rewind position, Rennie had access to a pallet jack to assist her in the completion of her job duties.

34. During her employment, Kennedy Group offered Rennie a promotion to a catcher position.

35. After beginning the catcher position, Rennie noticed that the heavy lifting, standing, and squatting were having an adverse effect on her knees.

36. Rennie requested the use of a pallet jack to assist her in the completion of her job duties while in her catcher position ("Catcher Pallet Jack Request").

37. The Catcher Pallet Jack Request was a request for an accommodation.

38. The Catcher Pallet Jack Request was reasonable.

39. The Catcher Pallet Jack Request would not have caused Kennedy Group undue burden.

40. Kennedy Group failed to enter into the interactive discussion to determine if there were reasonable accommodations available for Rennie following the Catcher Pallet Jack Request.

41. Kennedy Group refused the Catcher Pallet Jack Request.

42. On or around December 29, 2021, Rennie was in tears while at work due to pain from her osteoarthritis, as her knee became swollen ("December 2021 Incident").

43. In response to the December 2021 Incident, Scott Lane sent Rennie home from work and instructed her to seek medical treatment.

44. Lane was the supervisor on duty at Kennedy Group during the December 2021 Incident.

45. Following the December 2021 Incident, Rennie sought medical treatment.

46. On or around January 4, 2022, Rennie provided Defendants notice of her osteoarthritis.

47. On or around January 4, 2022, Rennie provided a note from her physician requesting that Rennie only work 4 – 8 hour shifts based on Rennie's toleration of knee pain ("January 4 Shift Length Request").

48. In addition to the January 4 Shift Length Request, Rennie requested the use of a stool while she worked ("Stool Request").

49. Both the January 4 Shift Length Request and the Stool Request were requests for accommodations ("January 4 Accommodation Requests").

50. The January 4 Accommodation Requests were reasonable.

51. The January 4 Accommodation Requests would not have caused Kennedy Group undue burden.

52. Rennie made the January 4 Accommodation Requests to Thomas.

53. Thomas was Rennie's human resources representative.

54. During all material events asserted herein, Thomas has and/or had authority to hire, fire, and/or discipline employees.

55. Thomas informed Rennie that Kennedy Group would provide the requested accommodations in the January 4 Accommodation Requests, but she would need to be reassigned back to the rewind position.

56. After her reassignment to the rewind position, Defendants failed to provide the requested accommodations in the January 4 Accommodation Requests.

57. Rennie complained to Thomas that her stools were taken away and that her team lead refused to provide Rennie with a stool, despite the January 4 Accommodation Requests being approved ("Failed Accommodation Complaint").

58. Upon information and belief, Defendants have a policy requiring investigations following receipt of a complaint of refusal to provide accommodations.

59. An investigation should include interviewing the complainant.

60. An investigation should include interviewing the subject of the complaint.

61. An investigation should include interviewing the subject of the reported incident.

62. An investigation should include interviewing witnesses to the reported incident.

63. An investigation should include getting a written statement from the complainant.

64. An investigation should include getting a written statement from the subject of the complaint.

65. An investigation should include getting a written statement from the subject of the reported incident.

66. In response to Rennie's Failed Accommodation Complaint, Thomas did not interview the team lead.

67. In response to Rennie's Failed Accommodation Complaint, Thomas did not get a written statement from Rennie.

68. In response to Rennie's Failed Accommodation Complaint, Thomas did not get a written statement from the team lead.

69. In response to Rennie's Failed Accommodation Complaint, Thomas did not take corrective action against the team lead.

70. Thomas ratified the team lead's conduct in failing to conduct an investigation into Rennie's Failed Accommodation Complaint.

71. Thomas ratified the team lead's conduct in failing to discipline the team lead following Rennie's Failed Accommodation Complaint.

72. As Defendants were not providing Rennie with accommodations, on January 13, 2022, Rennie provided a note from her physician requesting that Rennie take leave from work until she heals from knee surgery ("January 13 Letter").

73. The January 13 Letter included the date that Rennie's knee surgery was scheduled to be performed, April 14, 2022.

74. The January 13 Letter included the recovery period Rennie would need following her knee surgery, 12 weeks.

75. The January 13 Letter was a request for accommodations.

76. The January 13 Letter was reasonable.

77. The January 13 Letter would not have caused Defendants undue burden.

78. Defendants failed to engage in the interactive process to determine if there were reasonable accommodations available for Rennie following the January 13 Letter.

79. On or around January 20, 2022, Defendants terminated Rennie's employment.

80. Defendants terminated Rennie's employment because she is disabled.

81. Alternatively, Defendants terminated Rennie's employment because they perceived her to be disabled.

82. Defendants terminated Rennie's employment in retaliation for complaining about their failure to provide Rennie with accommodations.

83. Upon information and belief, Defendants have a progressive disciplinary policy ("Progressive Discipline Policy").

84. Defendants have used the Progressive Discipline Policy when disciplining non-disabled employees.

85. Alternatively, Defendants have used the Progressive Discipline Policy when disciplining employees they do not perceive to be disabled.

86. Defendants have used the Progressive Discipline Policy when disciplining employees who have not complained of failure to provide accommodations.

87. Under the Progressive Discipline Policy, Rennie had not received any meaningful discipline.

88. Under the Progressive Discipline Policy, Rennie had not received any written warnings.

89. Under the Progressive Discipline Policy, Rennie had not been suspended.

90. Defendants skipped steps under the Progressive Discipline Policy when they terminated Rennie's employment.

91. Skipping steps under the Progressive Discipline Policy is an adverse employment action.

92. Skipping steps under the Progressive Discipline Policy is an adverse action.

93. Defendants intentionally skipped steps under the Progressive Discipline Policy when they terminated Rennie's employment.

94. Defendants willfully made the decision to skip steps under the Progressive Discipline Policy when they terminated Rennie's employment.

95. Terminating Rennie's employment was an adverse employment action.

96. Terminating Rennie's employment was an adverse action.

97. Defendants intentionally terminated Rennie's employment.

98. Defendants willfully made the decision to terminate Rennie's employment.

99. Defendants terminated Rennie's employment in violation of the Progressive Discipline Policy because she is disabled.

100. Alternatively, Defendants terminated Rennie's employment in violation of the Progressive Discipline Policy because they perceived her to be disabled.

101. Defendants terminated Rennie's employment in violation of the Progressive Discipline Policy because she complained that Defendants failed to provide Rennie with accommodations.

## **COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF 42 U.S.C. 126 § 12101** *et seq.*

102. Rennie restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

103. Rennie suffers from osteoarthritis.

104. Rennie's osteoarthritis constitutes a physical impairment.

105. Rennie has a record of her osteoarthritis.

106. Rennie's osteoarthritis substantially impairs one or more of her major life functions, including standing, walking, and working.

107. As a result of suffering from osteoarthritis, Rennie is disabled.

108. Alternatively, Defendants perceived Rennie to be disabled.

109. Despite any real or perceived disability, Rennie was capable of performing her essential job functions with or without reasonable accommodation(s).

110. Defendants treated Rennie differently than other similarly-situated employees based on her disabling condition.

111. Alternatively, Defendants treated Rennie differently than other similarly-situated employees based on her perceived disabling condition.

112. On or about January 20, 2022, Defendants terminated Rennie's employment without just cause.

113. Defendants terminated Rennie's employment based her disability.

114. Alternatively, Defendants terminated Rennie's employment based her perceived disability.

115. Defendants violated 42 U.S.C. 126 § 12101 *et seq.* when they discharged Rennie based on her disability.

116. Alternatively, Defendants violated 42 U.S.C. 126 § 12101 *et seq.* when they discharged Rennie based on her perceived disability.

117. Defendants violated 42 U.S.C. 126 § 12101 *et seq.* by discriminating against Rennie based on her disabling condition.

118. Alternatively, Defendants violated 42 U.S.C. 126 § 12101 *et seq.* by discriminating against Rennie based on her perceived disabling condition.

119. Rennie suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 126 § 12101 *et seq.*

120. As a direct and proximate result of Defendants' conduct, Rennie suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***

121. Rennie restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

122. Rennie suffers from osteoarthritis.

123. Rennie's osteoarthritis constitutes a physical impairment.

124. Rennie has a record of her osteoarthritis.

125. Rennie's osteoarthritis substantially impairs one or more of her major life functions, including standing, walking, and working.

126. As a result of suffering from osteoarthritis, Rennie is disabled.

127. Alternatively, Defendants perceived Rennie to be disabled.

128. Despite any real or perceived disability, Rennie was capable of performing her essential job functions with or without reasonable accommodation(s).

129. Defendants treated Rennie differently than other similarly-situated employees based on her disabling condition.

130. Alternatively, Defendants treated Rennie differently than other similarly-situated employees based on her perceived disabling condition.

131. On or about January 20, 2022, Defendants terminated Rennie's employment without just cause.

132. Defendants terminated Rennie's employment based her disability.

133. Alternatively, Defendants terminated Rennie's employment based her perceived disability.

134. Defendants violated R.C. § 4112.01 *et seq.* when they discharged Rennie based on her disability.

135. Alternatively, Defendants violated R.C. § 4112.01 *et seq.* when they discharged Rennie based on her perceived disability.

136. Defendants violated R.C. § 4112.01 *et seq.* by discriminating against Rennie based on her disabling condition.

137. Alternatively, Defendants violated R.C. 4112.01 *et seq.* by discriminating against Rennie based on her perceived disabling condition.

138. Rennie suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

139. As a direct and proximate result of Defendants' conduct, Rennie suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT III: FAILURE TO ACCOMODATE UNDER THE AMERICANS WITH DISABILITY ACT

132. Rennie restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

133. Rennie informed Defendants of her disabling condition.

134. Rennie requested accommodations from Defendants to assist with her disabilities including the Catcher Pallet Jack Request, the January 4 Shift Length Request, the Stool Request, and the January 13 Letter..

135. Rennie's requested accommodations were reasonable.

136. There were accommodations available that would have been effective and would have not posed an undue hardship to Defendants.

137. Defendants failed to engage in the interactive process of determining whether Rennie needed an accommodation.

138. Defendants failed to provide an accommodation.

139. Defendants violated the ADA, 42 U.S.C. 126 § 12101 *et seq.*, by failing to provide reasonable accommodations when requested and failing to engage in the interactive process.

140. As a direct and proximate result of Defendants' conduct, Rennie suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT IV: FAILURE TO ACCOMODATE UNDER R.C. 4112.01 *et seq.*

141. Rennie restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

142. Rennie informed Defendants of her disabling condition.

143. Rennie requested accommodations from Defendants to assist with her disabilities including the Catcher Pallet Jack Request, the January 4 Shift Length Request, the Stool Request, and the January 13 Letter..

144. Rennie's requested accommodations were reasonable.

145. There were accommodations available that would have been effective and would have not posed an undue hardship to Defendants.

146. Defendants failed to engage in the interactive process of determining whether Rennie needed an accommodation.

147. Defendants failed to provide an accommodation.

148. Defendants violated R.C. § 4112.01 *et seq.* by failing to provide Rennie a reasonable accommodation.

149. Rennie suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

150. As a direct and proximate result of Defendants' conduct, Rennie suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT V: RETALIATION IN VIOLATION OF 42 U.S.C. 126 § 12101 *et seq*.**

151. Rennie restates each and every prior paragraph of this complaint, as if it were fully restated herein.

152. During her employment, Rennie requested reasonable accommodations due to her disabiling conditions.

153. Requesting accommodations for disabling conditions is a protected activity.

154. Defendants were aware of Rennie's accommodation requests.

155. Subsequent to requesting accommodations for her disabling conditions, Defendants terminated Rennie's employment.

156. Defendants' actions were retaliatory in nature based on Rennie's participation in a protected activity.

157. Rennie suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. § 2000e *et seq*.

158. As a direct and proximate result of Defendants' retaliatory discrimination against and termination of Rennie, she suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT VI: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION IN VIOLATION OF R.C. § 4112.02(J)

159. Rennie restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

160. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

161. Thomas aided, abetted, incited, coerced, and/or compelled Defendants' discriminatory treatment of Rennie.

162. Thomas violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting and inciting discrimination.

163. Thomas aided, abetted, incited, coerced, and/or compelled Defendants' discriminatory termination of Rennie.

164. Rennie suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

165. As a direct and proximate result of Defendants' conduct, Rennie has suffered and will continue to suffer damages, including economic and emotional distress damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Rennie demands from Defendants the following:

(a) Issue an order requiring Defendants to restore Rennie to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Rennie for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Rennie's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ Taurean J. Shattuck
Taurean J. Shattuck (0097364)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email: Taurean.Shattuck@spitzlawfirm.com

*Attorney For Plaintiff*

## **JURY DEMAND**

Plaintiff Stephanie Rennie demands a trial by jury by the maximum number of jurors permitted.

>                                         */s/ Taurean J. Shattuck*
>                                         Taurean J. Shattuck (0097364)
>                                         **SPITZ, THE EMPLOYEE'S LAW FIRM**